**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **IN RE BRISTOL-MYERS SQUIBB SECURITIES LITIGATION** | : | **Civil Action No. 00-1990 (SRC)** |
| | : | **M E M O R A N D U M O P I N I O N** |

**HUGHES, U.S.M.J.**

This matter comes before the Court upon Motion by Defendants, Bristol-Myers Squibb Company, Peter R. Dolan, Charles A. Heimbold, Jr. and Peter S. Ringrose ("Defendants") for leave to include a questionnaire with the class notice. Specifically, Defendants wish to include a questionnaire seeking information concerning the securities held, purchased and/or sold by class members (e.g., date of transaction, number of shares and transaction price) and the information upon which class members relied in transacting in Bristol-Myers Squibb securities. *See* Defs.['] Br. at 2. Lead Plaintiff ("Plaintiff") opposes the inclusion of the questionnaire on the grounds that it is untimely, improper, impractical and unethical. The Court has reviewed the papers submitted by the parties and considered the matter pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Defendants' Motion for leave to include a questionnaire with the class notice is denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

In April of 2000, several class actions were filed against Bristol-Myers Squibb and its officers, alleging violations of federal securities law and state common law. The District Court

consolidated the actions and appointed a Lead Plaintiff on July 24, 2000. A Consolidated Class Action Complaint was filed against Bristol-Myers Squibb, Heimbold and Ringrose and on March 8, 2001, after Defendants filed a motion to dismiss various claims, the Court upheld certain of Plaintiff's federal securities claims.

Subsequent to that Opinion, the District Court certified a class of all persons who purchased Bristol-Myers Squibb common stock during the time period spanning from November 8, 1999 through April 19, 2000 ("initial class period"). Following class certification, Plaintiffs were granted leave to file an Amended Complaint ("First Amended Complaint") on or about May 15, 2002. This Complaint added allegations against Defendant Dolan, who had previously not been an individually named party to the case. Defendants were granted until October 21, 2002 to answer the First Amended Complaint. An Amended Answer was filed on or about November 13, 2002. On or about April 29, 2002, Defendants moved for Partial Judgment on the Pleadings, and on June 6, 2003, Plaintiff cross-moved for Leave to File a Second Amended Complaint.

In its proposed Second Amended Complaint, Plaintiff alleged violations of Section 10(b) of the 1934 Securities Exchange Act and Rule 10(b)(5) by all Defendants, as well as violations of 20(a) of the Exchange Act against Defendants Heimbold and Dolan. Additionally, on July 2, 2004, a Stipulation and Order was entered by the Court certifying a class of all persons who purchased Bristol-Myers Squibb common stock during the time period spanning from March 22, 2001 through March 20, 2002 ("second class period"). On August 19, 2004, the Court issued an Opinion granting and denying in part, Defendants' Motion for Partial Judgment on the Pleadings and Plaintiff's Cross-Motions for leave to file a Second Amended Complaint.

Finally, fact discovery closed on April 15, 2004, the parties are currently engaged in the

process of deposing in excess of 25 experts, summary judgment motions are to be filed by December 17, 2004, and the Final Pretrial Conference is scheduled for December 20, 2004.

**A. Defendants' Motion to Include a Questionnaire with the Class Notice**

In this case, Defendants ask that the Court enter an order providing that the above-mentioned questionnaire be included with the class notice to the members of the first and second class. Plaintiff is required to provide this notice pursuant to Federal Rule of Civil Procedure 23(c)(2)(B). Specifically, Defendants make the claim that "[l]ead Plaintiff has refused (by ignoring) Defendants' request that a brief questionnaire be included with the [c]lass [n]otice requesting from absent class members information necessary to Defendants' defense and the fair and efficient resolution of this case**."** *See* Defs. [‘] Br. at 1. Defendants reinforce their claims of Plaintiff's "inattention" to their request by stating that they

> requested the information sought in the questionnaire from Lead Plaintiff and informed Lead Plaintiff that, unless Lead Plaintiff provided the requested information, Defendants would move the Court for leave to submit the questionnaire with the class notice after the Court ruled on Lead Plaintiff's motion for certification of the second class. In anticipation of a discovery conference, Defendants also notified Magistrate Judge Hughes of their intention to move the Court for leave to submit a questionnaire. Nearly eleven weeks have passed since the Court certified the second class. Lead Plaintiff has ignored Defendants' request that the questionnaire be included with the class notice and has apparently taken no steps toward providing notice to the [c]lasses.

(*Id.* at 2, n. 1) (internal citations omitted).

Defendants argue that their use of the questionnaire is "proper under the guidelines adopted by this Court." *Id.* at 2. Specifically, Defendants assert that these guidelines specify that discovery from absent class members is warranted when the information sought is relevant to

common questions, unavailable from the parties, and is sought in good faith and in a manner that is not unduly burdensome. *Id.* Defendants maintain that use of the questionnaire in this case will allow the parties access to information that is not only relevant, but also necessary to deciding the common questions of reliance and damages. *Id.* at 2-3**.** It is furthermore the position of Defendants, that the information sought in the questionnaire is not available from the representative of the classes and is not already known to Defendants. *Id.* at 3.

Defendants maintain that the "simple, four-page [q]uestionnaire, while providing the parties with critical discovery, will not be unduly burdensome to absent class members." *Id.* They note that "[c]ompletion of the [q]uestionnaire will be voluntary and class members will not be penalized for failing to complete it." *Id.* With regard to the potential information obtained through the questionnaire, Defendants argue that it will "promote fair and efficient case management by providing the parties with information upon which they can make accurate and realistic assessments of the potential liability and damages in this case." *Id.* Defendants take issue with Plaintiff's expert report which they characterize as "inaccurately calculat[ing] alleged damages to be between $8.5 and $11.4 billion based on estimates of the number of allegedly damaged shares and estimates of the amount by which each share was allegedly damaged." *Id.* It is the overriding position of Defendants that completion of the [q]uestionnaire by the class members will enable Defendants to accurately calculate any alleged damages. *Id.*

**B. Plaintiff's Opposition**

In response, Plaintiff begins by noting that Defendants' request comes [m]ore than four years after the commencement of this action, almost three years after the first class was certified, *and more than six months after the close of all fact discovery.*" *See* Pl. ['s] Br. at 1. (emphasis

original). Plaintiff describes the questionnaire as "improper, impractical, and unethical for a host of reasons." *Id.* Outlining four points, Plaintiff asserts first that "it is an understatement to say that Defendants' motion is untimely." *Id.* Plaintiff notes that "this Court, with the agreement of the parties, ordered that all fact discovery be completed by April 15, 2004." No exceptions to this deadline have been allowed by the Court, and this motion should be no exception [...]" *Id.*

Next, Plaintiff asserts that Courts in this Circuit do not permit discovery related to reliance and damages of absent class members in securities fraud cases prior to the establishment of liability. *Id.* It is the position of Plaintiff that "[t]he applicable, stringent standards provide, in part, that discovery of absent class members must be relevant to the decision of *common questions*; however, reliance and damages are *individual questions*. *Id.* (emphasis original). Plaintiff argues that based upon this distinction, "Defendants have not, and cannot, satisfy the standards applicable to their motion." *Id.*

Plaintiff next asks the Court to examine the motives behind Defendants' Motion:

> Given the late date on which Defendants filed their motion, the information gleaned from the completed questionnaire would not be available for use during the expert discovery period or during dispositive motion practice (both of which are scheduled during November and December 2004). Accordingly, Defendants may only use the information at the trial of this action. However, courts within this Circuit hold that notices of claim should be deferred until after liability is established. Defendants have offered no explanation as to why this well-established precedent should be disregarded here.

*Id.* at 2.

Moreover, Plaintiff asserts that the proposed questionnaire is "unethical and impractical at this time." *Id.* Citing the fact that Defendants propose that the questionnaire be returned to

one of their own counsel and that the class is certified and therefore Plaintiff's counsel is counsel to all absent class members, Plaintiff claims that "[p]ursuant to the Rules of Professional Conduct, R.P.C. 4.2, Defendants' counsel may not ethically communicate with absent class members who are represented by counsel, here Lead Plaintiff's counsel." *Id.* Accordingly, Plaintiff argues that if the proposed questionnaire be allowed, it must be returned to Plaintiff's counsel or a claims administrator. Finally, Plaintiff asserts that

> Defendants apparently have not considered or addressed a host of practical issues raised by the questionnaire, such as: how will absent class members be informed of Defendants' alleged fraud so that they may intelligently answer the questionnaire? Who will pay for the cost of mailing of the questionnaire and tabulating the responses? Who will answer absent class members' questions concerning the questionnaire?

*Id.*

Accordingly, Plaintiff argues that for these reasons, Defendants' motion must be denied in its entirety. *Id.*

### C. Defendants' Reply

Defendants reply that Plaintiff's opposition to the present Motion "offers little substantive opposition to Defendants' Motion." *See* Defs. [‘] Reply Br. at 1. Defendants argue that "[c]ontrary to Lead Plaintiff's arguments, [the] Motion is timely, and, as recognized by this Court, a questionnaire is a proper means for seeking information about the common questions of reliance and damages from absent class members." *Id.*

## II. <u>DISCUSSION</u>

### A. Scope of Discovery/Case Management

When making any decision on the scope of discovery, the federal courts are primarily

guided by the Federal Rules of Civil Procedure which are to be "construed and administered to ensure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1. Furthermore, the Federal Rules of Civil Procedure embrace a liberal policy for providing discovery and contain the following provision governing the scope of such discovery:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books documents or tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1), effective December 1, 1993.

Courts have construed this rule liberally, creating a broad vista for discovery which would encompass any matter that bears on or reasonably could lead to other matters that could bear on any issue that is or may be in the case. *Tele-Radio Systems, Ltd. v. DeForest Electronics, Inc.*, 92 F.R.D. 371 (D.N.J. 1981) (*citing Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The parties must be allowed to scrutinize all relevant evidence so that each will have a fair opportunity to present a case at trial. *Goldy v. Beal*, 91 F.R.D. 451, 454 (M.D. Pa. 1981).

However, when a party moves to seek additional discovery after the deadline established in the pretrial Scheduling Order, the party must first satisfy Rule 16(b) of the Federal Rules of Civil Procedure. Specifically, Rule 16 provides that a pretrial Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge, or, when authorized by local rule, by a magistrate judge." FED. R. CIV. P. 16(b). "A finding of good

cause depends on the diligence of the moving party. In other words, the movant must show that the deadlines cannot be reasonably met despite its diligence." *Rent-A-Center v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003) (citations omitted); *see also* FED. R. CIV. P. 16 advisory committee's note ("[T]he court may modify the schedule on a showing of good cause if [the deadlines] cannot be reasonably met despite the diligence of the party seeking the extension."). Moreover, "[t]he lack of prejudice to the nonmovant does not show 'good cause.'" *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D.Kan. 1995) (citation omitted).

The Third Circuit Court of Appeals has determined that "scheduling orders are at the heart of case management [and cannot] be flouted." *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 341 n.4 (3d Cir.) (quoting *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986)); *U.S. v. Princeton-Gamma-Tech, Inc*., 817 F. Supp. 488, 497 (D.N.J. 1993). "The reason for this is simple – scheduling orders are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed." *Id.* (citing *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339-40 (2d Cir. 2000)).

Finally, Federal Rule of Civil Procedure 26(b)(2)(ii) permits a Court to limit discovery when "the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought." FED. R. CIV. P. 26(b)(2)(ii). This subdivision "seeks to reduce repetitiveness and to oblige lawyers to think through their discovery activities in advance so that full utilization is made of each deposition, document request, or set of interrogatories." FED. R. CIV. P. 26 advisory committee notes.

**B. Discovery of Absent Class Members**

In the present matter, Defendants move to include a questionnaire with the notice of

pendency of the class action, on the grounds that it is relevant to the common questions of reliance and damages, and that the information requested is not available from Lead Plaintiff and is not otherwise known to Defendants. Moreover, Defendants submit that the questionnaire is tendered in good faith, is not unduly burdensome and will promote fair and efficient case management. Plaintiff asserts that the questionnaire is an untimely request for discovery and that further, Defendants have not satisfied the applicable standards for discovery of absent class members.

Postcertification discovery directed at individual class members (other than named plaintiffs) should be conditioned on a showing that it serves a legitimate purpose. MANUAL FOR COMPLEX LITIGATION FOURTH § 21.41 (4th ed. 2004). One of the principal advantages of class actions over massive joinder or consolidation would be lost if all class members were routinely subjected to discovery. *Id.* Most courts limit discovery against unnamed class members, but do not forbid it altogether. *Id.* (citing 8A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2171, at 277 (1994)).

In setting appropriate limits, a judge should inquire whether the information sought from absent class members is available from other sources. *Id.* (citing *Redmond v. Moody's Investor Serv.,* No. 92 CIV. 9161, 1995 WL 276150, at 2 (S.D.N.Y. May 10, 1995) (granting plaintiff's motion for protective order under Rule 26(c) to restrict interrogatories and document requests; *see also Dellums v. Powell*, 566 F.2d 167, 187 (D.C. Cir. 1977)). Another concern is whether the proposed discovery will require class members to obtain personal legal counsel or technical advice from an expert. *Id.* (citing *Collins v. Int'l Dairy Queen,* 190 F.R.D. 629, 632-33 (M.D. Ga. 1999) (denying discovery motion allowing defendant opportunity to ask absent class

members questions that would "require the assistance of an accountant or an attorney"); *Kline v. First W. Gov't Sec., Inc.* No. CIV. A.83-1076, 1996 WL 122717, at 5 (E.D. Pa. Mar. 11, 1996) (denying defendants motion for discovery of absent class members and noting discovery would be impractical as class members would need to consult an attorney or an accountant).

Some courts have held that class members are not parties for the purpose of discovery by interrogatories, but may be required to respond to a questionnaire approved by the court. *Id.* (citing *Schwartz v. Celestial Seasonings, Inc.*, 185 F.R.D. 313, 319 (D. Colo. 1999) (holding that while "class members are not considered parties for purposes of traditional discovery measures," limited discovery of class members will be allowed "in the form of questionnaires"); *McCarthy v. Paine Webber Group, Inc.*, 164 F.R.D. 309, 313 (D. Conn. 1995) (holding that questionnaire directed at absent class members was essentially a "proof of claim" form and would not be allowed); *cf. Krueger v. N.Y. Tel. Co.,* 163 F.R.D. 446, 451 (S.D.N.Y. 1995) (allowing defendant to send to all members of a small class a questionnaire limited to individual damage questions).

Still other courts have permitted limited numbers of interrogatories upon a showing of need, limited the number of class members to whom interrogatories may be directed, limited the scope of discovery to a brief, nonmandatory questionnaire relating to common issues, or have imposed on defendants the added cost of mailing otherwise permissible interrogatories to absent members of a plaintiff class. *Id.* (citing respectively *Long v. Trans World Airlines Inc.*, 761 F. Supp. 1320, 1329 (N.D. Ill. 1991) (finding discovery of absent class members by sampling necessary and appropriate in determining damage claims); *Transamerican Ref. Corp. v. Dravo Corp.*, 139 F.R.D. 619, 622 (S.D. Tex. 1991) (permitting discovery from 50 of 6,000 absent class members "only on a random sample basis"); *cf. Buycks-Robertson v. Citibank Fed. Sav. Bank*,

162 F.R.D. 338, 341-42 (N.D. Ill. 1995) (declining to limit discovery conducted on behalf of a class to a sample selected by the defendant); *Schwartz*, 185 F.R.D. at 316-17, 319; *see also* Wayne D. Brazil, *Special Masters in Complex Cases: Extending the Judiciary or Reshaping Adjudication?,* 53 U. Chi. L. Rev. 394, 403-04 (1986) (describing the use of a survey interview protocol by specially trained college students to elicit information from 9,000 claimants); *Alexander v. Burrus, Cootes & Burrus*, 24 Fed. R. Serv. 2d (Callaghan) 1313, 1314 (4th Cir. 1978) (per curiam) (unpublished opinion) (allowing defendant accounting firm to use contact information furnished by plaintiffs to mail its interrogatories to class members at its own expense); *cf. Schwartz*, 185 F.R.D. at 320 (requiring plaintiffs and defendants to share the costs of mailing to absent class members a questionnaire that aids both sides); *In re Airline Ticket Comm'n Antitrust Litig*., 918 F. Supp. 283, 288 (D. Minn. 1996) (ordering defendants to pay 75% of costs relating to survey of absent class members).

While perhaps drawing upon differing origins, both Plaintiff and Defendants agree on the applicable guidelines regarding discovery of absent class members. *See* Pl. ['s] Br. at 6; Defs. ['] Br. at 4. These guidelines, first discussed in *Brennan v. Midwestern United Life,* 450 F.2d 999 (7th Cir. 1971), were modified by later cases, notably *Clark v. Universal Builders*, 501 F.2d 324 (7th Cir. 1974) and *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986), *cert. denied,* 479 U.S. 883 (1986). In the 1994 case of *Easton & Co. v. Mutual Benefit Life Insurance Co., et al.* 1994 WL 248172 (D.N.J.), the Court noted that

> [t]he majority of courts considering the scope of discovery against absent class members have granted discovery via interrogatories or document requests (1) where the information requested is relevant to the decision of common questions, (2) when the discovery requests are tendered in good faith and are not unduly burdensome,

> and (3) when the information is not available from the class representative parties.

*Easton,* 1994 WL 248172, at 3. (internal citations omitted). A fourth requirement, noted in the *Clark* case and recognized by both parties here, is that the discovery not seek information on matters already known to defendants. *Id.* (citing *Clark,* 501 F.2d 324, 341 n. 24).

**III. ANALYSIS**

Defendants rely largely on the *Easton* case*,* noting that in that case, "[t]his Court approved such a questionnaire for absent class members." Defs. [‘] Br. at 3. The *Easton* case was a securities fraud class action involving 160 class members. *Easton,* 1994 WL 248172, at 2. Plaintiff correctly notes that *Easton* is the only case from within the Third Circuit cited by Defendants, and that it has never been followed within, or outside, this Circuit. Pl. [‘s] Br. at 10.

At the outset, the Court here notes that we are dealing with probably tens of thousands of class members from whom discovery is sought, and that it is requested six months after discovery has concluded. Also, in *Easton*, it was the Court that suggested a questionnaire in lieu of interrogatories and requests for documents as an expeditious means of discovery. Presumably, this suggestion occurred well within the discovery period.

Simply stated, Defendants request for discovery of the absent class members comes too late. Defendants assert that in *Easton* the questionnaire was sent to the classes six months after the second of two classes was certified and two and one-half months after the class notice was sent. Defs. [‘] Reply Br. at 3. What Defendants do not note is that the motion at issue in *Easton* was for a protective order precluding the class members from answering the *already dispatched* interrogatories and document requests. *Easton*, 1994 WL 248172, at 2. (emphasis added). In

fact, in the *Easton* case, the Court ordered that the Defendants re-draft the discovery request "by incorporating information already available to [D]efendants...informing an individual class member of the securities purchased by him or her, as well as the dates, prices, and brokers correlating to those purchases." *Id.* at 6. This type of information, which the *Easton* Court ordered be provided to the class, is not unlike that which Defendants seek from the class here.

Applying the four factors utilized in *Easton* to the present case leads this Court to conclude that the proposed request is inappropriate given all the circumstances here. First, as was stated in *Kline*, the determination of exactly what each class member relied on in making the decision to invest [...] is an individual question, more properly adjudicated after the common questions have been determined. *Kline*, 1996 WL 122717, at 3 (citing *McMahon Books, Inc. v. Willow Grove Associates*, 84-3861, 1986 WL 239, at 2-3 (E.D. Pa. June 26, 1986); *Sharp v. Coopers & Lybrand*, 70 F.R.D. 544, 547 (E.D. Pa. 1976), *aff'd*, 649 F.2d 175 (3d Cir. 1981)(cited with approval in *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985)).

Second, while this Court cannot agree with Plaintiff that "the requests are not tendered in good faith," they most certainly appear to be "unduly burdensome." *See* Pl. ['s] Br. at 7. As is indicated in Plaintiff's Brief, the questionnaire seeks extensive information and supporting documentation about class members' trades including:

> (a) brokerage confirmation slip(s); (b) brokerage monthly statement(s); (c) schedule D from federal tax return; or (d) notarized statement signed by claimant showing trade date(s), quantity of shares, and price for each transaction, including an explanation as to why it is burdensome or unreasonable to submit the other types of documents requested.

*Id.* at 9 (citing Defs. ['] Br. at 4). Such requests certainly raise the, not unreasonable, concern

that the proposed discovery will require class members to obtain personal legal counsel or technical advice from an expert. MANUAL FOR COMPLEX LITIGATION FOURTH § 21.41 (4th ed. 2004) (citing *Collins v. Int'l Dairy Queen,* 190 F.R.D. 629, 632-33 (M.D. Ga. 1999) (denying discovery motion allowing defendant opportunity to ask absent class members questions that would "require the assistance of an accountant or an attorney"); *Kline v. First W. Gov't Sec., Inc.* No. CIV. A.83-1076, 1996 WL 122717, at 5 (E.D. Pa. Mar. 11, 1996) (denying defendants motion for discovery of absent class members and noting discovery would be impractical as class members would need to consult an attorney or an accountant).

Lastly, despite the fact that Plaintiff argues that Defendants' counsel may not ethically communicate with absent class members who are represented by counsel, they rightly observe that "the requests seek information known to Defendants or that may be obtained by Defendants by other sources." Pl. ['s] Br. at 9. According to Plaintiff, Defendants have identified 120,000 of their shareholders of record and "may simply contact or subpoena brokerage firms and obtain the necessary information showing all trade dates and prices. *Id.* (citing Preston Aff. ¶¶ 16, 24). Again, at the risk of belaboring the point, the Court in *Easton* recognized this same notion, and did so, apparently, during the normal course of discovery, not at the tail end of the litigation.

In the present matter, timing is the critical factor. Fact discovery in this case was concluded on April 15, 2004, the parties are currently engaged in the process of deposing in excess of 25 experts, summary judgment motions are to be filed by December 17, 2004, and the Final Pretrial Conference is scheduled for December 20, 2004. This is, quite simply, a case poised for final resolution. Although Defendants notified this Court of their intention to seek an order requiring a questionnaire as far back as March 29, 2004, they waited until the final days of

the litigation to propose sending a multi-part questionnaire to literally tens of thousands of absent class members. *See* Defs. [‘] Ltr. dated March 29, 2004.

Finally, based on the breathtaking volume of written discovery, (*See In re Bristol-Meyers Squibb Securities Litigation*, 205 F.R.D. 437 (D.N.J. 2002)), and the sheer number of depositions conducted, it appears clear that “the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought.” FED. R. CIV. P. 26(b)(2)(ii). This decision is in keeping with the purpose of Rule 26 which in part, “seeks to reduce repetitiveness and to oblige lawyers to think through their discovery activities in advance so that full utilization is made of each deposition, document request, or set of interrogatories.” FED. R. CIV. P. 26 advisory committee notes.

## IV. CONCLUSION

For the reasons set forth herein, Defendants’ Motion to include a questionnaire in the class notice is denied. The Court finds that the questionnaire represents an untimely request for discovery by arriving at a point in the litigation which would serve to confound, rather than facilitate, a just resolution. The Court also finds that the request does not warrant modifying the Pretrial Scheduling Order. Finally, Defendants had ample opportunity during fact discovery to obtain the information sought. An appropriate Order accompanies this Memorandum Opinion.

DATED: November 18, 2004.